UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN DURM, JR. as Personal Representative of the Estate of John Durm, Sr., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:24-cv-01321-SEB-KMB |
| MARION COUNTY, INDIANA SHERIFF'S OFFICE, KERRY J. FORESTAL Marion County Sheriff, in his Official Capacity as Sheriff of Marion County, THE HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY d/b/a ESKENAZI HEALTH, CINTAS CORP. NO. 2, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff John Durm, Jr., as Personal Representative of the Estate of John Durm, Sr. ("Estate" or "Deputy Durm, Sr.") filed a Complaint on August 5, 2024, against (*inter alia*) the Marion County, Indiana Sheriff's Office; and Marion County Sheriff Kerry J. Forestal, in his Official Capacity as Sheriff ("Forestal") (collectively, "Defendants"), pursuant to § 1983, in which he raises Fourteenth Amendment claims emanating from the tragic death of his father, Deputy Durm, Sr., on July 10, 2023.

Deputy Durm, Sr. had been employed by the Marion County Sheriff's Department with responsibility for transporting inmates to locations outside the jail for purposes (for example) of receiving healthcare. On July 10, 2023, an inmate whom Deputy Durm, Sr.

1

was transporting back to the jail via the prison van following a brief hospital visit attacked and killed Deputy Durm inside the sally port of the Marion County Adult Detention Center ("ADC"). Plaintiff Estate seeks to hold the Defendants liable for Deputy Durm, Sr.'s death, arguing that it resulted from Defendants' actions (or more accurately, non-action).

Defendants challenge the legal sufficiency of these claims against them in the Complaint in their motion for judgment on the pleadings filed on August 28, 2024, dkt. 9, which was responded to by Plaintiff on September 11, 2024, dkt. 11, and to which Defendants replied on October 2, 2024, dkt. 23.[1] Defendants seek both the dismissal of the substantive constitutional claims against them as well as dismissal of the separate claim against Sheriff Forestal who has been sued solely in his official capacity. The motion is fully briefed and ripe for rulings, which we set forth below.

## Applicable Legal Standard

Under Rule 12(c), Fed. R. Civ. P., "a party may move for judgment" once "the pleadings are closed," so long as such motion is brought early enough not to delay trial. Much "[l]ike Rule 12(b) motions, courts grant Rule 12(c) motions only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.' " *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. Gen. Elec. Cap. Corp.*, 12 F.3d 686, 688 (7th Cir.

---

[1] On November 5, 2024, Co-Defendant The Health and Hospital Corporation of Marion County d/b/a Eskenazi Health ("Eskenazi") moved to dismiss the Complaint for failure to state claims upon which relief can be granted. Dkt. 24. That motion will be undertaken and resolved in due course.

2

1993)). The moving party must, therefore, "demonstrate that there are no material issues of fact to be resolved." *Id.* In reviewing "the complaint, the answer, and any written instruments attached as exhibits," we take the facts in the light most favorable to the nonmoving party. *Id.*; *e.g.*, *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017).

### Factual Background

The Estate's lawsuit consists of two claims for the alleged violation of Deputy Durm's substantive due process rights under the Fourteenth Amendment. As such, suit is brought pursuant to 42 U.S.C. § 1983, requiring in what have become familiar words and phrases that a plaintiff allege (and ultimately prove) that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Kramer v. Vill. of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004).

The Complaint, in Section IV, Paragraph 26, contains the Estate's specific allegations against the Sheriff's Department, accusing it of "creating and maintaining" the following policies, customs, practices and procedures:

  a. Plaintiff alleges that the Sheriff's Office had a *de facto* policy, custom, practice or procedure of:

  b. Failure to implement the two-party requirement for transport of violent and dangerous inmates;

  c. Failure to require violent and dangerous inmates to be identified by a red jumpsuit instead of the orange jumpsuit worn by non-violent inmates;

  d. Failure to provide adequate and appropriate staffing to monitor and implement security functions at the Marion County Jail, including but not

    limited to inadequate staffing/training with Central Command/Central Control;

e. Failure to ensure access to a working automated external defibrillator (AED);

f. Failure to properly and adequately monitor the vehicle loading and unloading of inmates through the sally port for transport by the deputies;

g. Failure to properly monitor, supervise, operate, and secure the sally port door; and

h. [Maintaining] [d]angerously low staffing levels which led to the Sheriff's Office's blatant failure to follow policies, procedures and recommendations of Community Resource Services, Gettysburg, PA.

Compl. ¶ 26, dkt. 1; Am. Compl. ¶ 28, dkt. 40.[2]

The specific claims against Sheriff Forestal, who was sued in his official capacity, are set forth in Paragraphs 37 and 38 of Section IV of the Complaint, as follows:

> 37. Defendant Forestal acted in a supervisory capacity with respect to the incident involving Durm, Sr. In that capacity, Defendant Forestal acted intentionally, malicious[ly], in conscious disregard, and/or with deliberated indifference to the rights of Durm Sr. Plaintiff alleges that Defendant Forestal acted in this manner, at least in part, to avoid additional budgetary requests, avoid hiring more personnel, and generally to cut costs for the Sheriff's Office.
>
> 38. These supervisory failures of Defendant Forestal directly caused and contributed to Durm, Sr.'s loss of Life and Liberty, and caused his death.

Compl. ¶¶ 37, 38, dkt. 1; Am. Compl. ¶¶ 39–40, dkt. 40.

---

[2] On March 18, 2024, the Estate was granted leave to file an Amended Complaint, dkt. 40, which henceforth "supersede[d] [the] original complaint and render[ed] the original complaint void." *Flannery v. Recording Industry Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). At a telephonic status conference on March 25, 2025, the parties confirmed that the Amended Complaint did not change or modify the allegations against the Sheriff's Office, Sheriff Forestal, or Eskenazi, and, thus, no amendments to the pending motions were needed. Dkt. 43 at 1.

## **Legal Analysis**

Local governments and municipalities (*i.e.*, sheriffs' departments) may be held liable under § 1983 for constitutional violations. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020) (*en banc*) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978)). However, they can only be liable for their own actions; they cannot be held to be vicariously liable for the constitutional torts of their employees. *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 826 (7th Cir. 2022) ("[A] municipality may be liable only for conduct that is properly attributable to the municipality itself.") (internal quotations and citations omitted).

To hold a municipality or local government liable, a plaintiff must satisfy three elements. First, he must trace the constitutional violation to some municipal action. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617 (7th Cir. 2022). This can come in the form of "an express policy that causes a constitutional deprivation when enforced, a widespread practice that is so permanent and well-settled that it constitutes a custom or a practice; or an allegation that the constitutional injury was caused by a person with final policymaking authority." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022) (cleaned up). Second, he must show the municipal action amounts to deliberate indifference. *Stockton*, 44 F.4th at 616. And finally, he must show the action was the "moving force" behind the injury alleged. *J.K.J.*, 960 F.3d at 377.

No "bright-line" rule defines a widespread custom or practice, but a plaintiff generally "must introduce evidence that acquiescence on the part of the policymakers was and amounted to a policy decision." *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir.

5

2016); *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). "There is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance or even three." *Thomas*, 604 F.3d at 303 (internal citations omitted); *see also Rodriguez v. Milwaukee Cnty.*, 756 F. App'x 641, 643 (7th Cir. 2019), *reh'g denied* (Mar. 25, 2019).

For city policymakers' actions to have the "force of law," they must have been "deliberately indifferent as to [their] known or obvious consequences." *Gable v. City of Chicago*, 296 F.3d 531, 536 (7th Cir. 2002). Deliberate indifference, in the context of a widespread practice theory, means "a reasonable policymaker [would] conclude that the plainly obvious consequences of [his] actions would result in the deprivation of a federally protected right." *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997)); *Brock v. Casteel*, No. 1:13-CV-01577-DML, 2015 WL 3439236, at *9 (S.D. Ind. May 28, 2015); *Hall v. City of Chicago*, No. 12 C 6834, 2012 WL 6727511, at *6 (N.D. Ill. Dec. 28, 2012). These consequences may be plainly obvious when one knows or should know of their existence. *Wilson v. Cook Cnty.*, 742 F.3d 775, 781 (7th Cir. 2014).

## I.     Fourteenth Amendment Due Process Claim Against the Sheriff's Department

The Estate alleges that Defendants violated Deputy Durm's Fourteenth Amendment Due Process rights essentially by failing to protect him. Each of the specific "failures" listed in the Complaint represents a way in which Defendants' supervision of the jail fell short in failing to protect him. Stated otherwise, the Estate contends that Deputy Durm's murder by a violent inmate whom Deputy Durm was escorting back to the jail by way of the sally port was the result of the Defendants' failures to put in place

6

and to enforce various safety measures, which, had they been in effect, would have saved Deputy Durm's life.

In terms of the § 1983 elements, the parties do not dispute that the defendants were acting under color of state law when Deputy Durm was killed by the inmate. Thus, we turn next to the issue of whether the Estate has properly alleged a violation of a right secured by the Fourteenth Amendment. *See, e.g., Lanigan v. Vill. of E. Hazel Crest,* 110 F.3d 467, 471 (7th Cir. 1997).

As the Seventh Circuit recognized in *Wallace v. Adkins*, "The only such right that could apply here would be the substantive component of the due process clause, which 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.' " 115 F.3d 427, 428 (7th Cir. 1997) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quotation omitted)). That said, "[t]o the extent [the Estate's] claim rests on an alleged affirmative duty" imposed on the Sheriff's Department "to ensure the safety of its employees or its citizens," it runs up against the legal obstacles created by *Collins* and by *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989)." *Id.* at 428–29. Those Supreme Court decisions "make it clear that the due process clause imposes no general affirmative duty to protect on the state, nor does it guarantee public employees a workplace free of unreasonable risks of harm." *Id.* at 429 (citing *Collins,* 503 U.S. at 126, 129; *DeShaney,* 489 U.S. at 195).

There are two recognized exceptions to the *DeShaney* rule. The first exception, known as the "state-created danger doctrine," applies when a government actor

7

"affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Est. of Her v. Hoeppmer*, 939 F.3d 872, 876 (7th Cir. 2019) (quoting *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)). The second exception occurs when "the state has a 'special relationship' with a person, that is, if the state has custody of a person, thus cutting off alternative avenues of aid." *Id.* To maintain a due process claim under these exceptions, a plaintiff must prove three elements: "(1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the conduct in question 'shocks the conscience.' " *Id.* (quoting *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015)); *see also Est. of Tester by and Through Tester v. Vill. at Hamilton Pointe, LLC*, No. 3:24-cv-00005-MPB-CSW, 2024 WL 4433040, at *10–11 (S.D. Ind. Sept. 20, 2024).

The Estate makes only passing mention of *DeShaney* in its response brief, choosing to focus instead on the *Monell* elements. The Estate's argument, such as it is, is limited to a criticism of Defendants' motion for its failure to address the two exceptions to the *DeShaney* limitation on due process claims by an employee of a public employer based on a failure to provide protection. Thus, the Estate does not specifically argue that Deputy Durm was entitled to protection by the Sheriff's Office because there was a special relationship between them nor that the Sheriff's Office placed Durm in a position of danger that he would not have otherwise faced. Without these allegations, it is unclear how the Estate expects to avoid *DeShaney's* restrictions.

8

Defendants argue that neither DeShaney exception applies, nor could it. Because Deputy Durm, Sr. was at the time of his death an employee of the Sheriff's Office, the Estate's claims of liability against the State is a non-starter based on *DeShaney*'s clear holding that the due process clause of the Fourteenth Amendment imposes no affirmative duty on the State to protect him, nor does it guarantee public employees a workplace free of unreasonable risks of harm. *DeShaney*, 489 U.S. at 195.

Whether a special relationship in the context of substantive due process rights exists, as Defendants argue, arises in only two settings: "(1) custodial settings in which the state has limited the individual's ability to care for himself, and (2) when the state affirmatively places the individual in a position of danger the individual would not have otherwise faced." Dkt. 23 at 2 (citing *Est. of Stevens v. City of Green Bay*, 105 F.3d 1169, 1174 (7th Cir. 1997) (citing *DeShaney*, 489 U.S. at 199–202)). Well-established Seventh Circuit caselaw, as referenced below, makes clear that Deputy Durm, Sr. had neither a cognizable "special relationship" with the Defendants nor had he been placed by the State in a position of danger that he would not have otherwise faced.

Regarding the limitations of due process protections in the context of unsafe working conditions, Judge Easterbrook, writing for the Seventh Circuit in *Walker v. Rowe*, explained as follows: The Due Process Clause of the Fourteenth Amendment "is a constraint on the state's power to act, a prohibition on the misuse of official power. It does not require the state to guarantee life, liberty, or property; it requires only that the state not act, unless with due process, when life, liberty, or property are in the balance." 791 F.2d 507, 509 (7th Cir. 1986) (internal citation omitted).

9

In applying these principles to the case at bar, we hold that the Estate's claims as set forth in the Complaint do not and can not suffice to state a basis for relief because: (1) the State by its affirmative acts did not create or increase a danger to Deputy Durm, Sr., (2) no "special relationship" existed between Deputy Durm and the Sheriff's Office, such that the government's failure to protect him caused his injury, and (3) the failures alleged by the Estate as the cause of his death do not shock the conscience.

In the closely analogous case of *Wallace v. Adkins*, involving a plaintiff prison guard who had been killed by a violent inmate after the inmate, who was known to have threatened plaintiff in the past, was negligently housed in a cellblock where Plaintiff was on duty as the guard, the Seventh Circuit ruled as follows:

> We are similarly unpersuaded that the prison officials here affirmatively placed Wallace in a position of danger he would not otherwise have faced. There are two parts of this inquiry: what actions did the prison officials affirmatively take, and what dangers would Wallace otherwise have faced? The only affirmative act Wallace can point to is the order to remain on his post, which (on this appeal from a Rule 12(b)(6) dismissal) we assume the prison officials issued with full knowledge that Hernandez was a vicious murderer who was ready to strike Wallace at the first opportunity, which had just presented itself. We must also assume, as Wallace alleges, that upon receiving Wallace's request to be moved, the prison officials did nothing but offer the false assurances that they would protect him. The issuance of this order is enough to qualify as an affirmative act on the part of the officials. As Wallace noted at oral argument, it is quite different from a generalized complaint that D Cellhouse is a dangerous place.
>
> But Wallace fails on the second part of this inquiry. His real complaint is that the prison officials did not take a different affirmative step, namely, issuing an order permitting him to leave. However, the question is not what dangers he would have faced had the prison officials behaved as he wanted them to, but what dangers he would have faced absent the affirmative acts actually taken. Even without the actual order that was issued, Wallace would have had a duty to remain on his post whether or not the prison officials said a word. There is no doubt that he was in danger from Hernandez on the

> morning of March 23, 1994, and that the officials knew of the danger even before Hernandez tried to make good on his threat. But these are the risks of the guard's job. . . . The rationale of *Walker* compels us to hold here that the due process clause did not require the prison officials to issue an order permitting him to leave.

115 F.3d at 430.

So it is in our case: Deputy Durm, Sr. was placed in no more dangerous a position than any other guard charged with the responsibility of transporting prisoners off-site from the jail. It is inherently risky work, and danger lurks with every task. Placing him in that role cannot be properly viewed as the kind of "affirmative act" on the part of the Sheriff's Office that would subject the State to liability for the actions that occurred when the inherent risks materialized.

Regarding the second element—the government's failure to protect against the danger that caused the plaintiff's injury—such a claim is foreclosed by the fact that there is no substantive due process right to a safer working environment when the work being performed involves inherent risks to worker safety. In *Walker*, the Seventh Circuit wrote: "The constitution does not assure employees of the government better terms or working conditions or amenities than those available in private employment. . . . We therefore hold that the due process clause does not assure safe working conditions for public employees." 791 F.2d at 510–11 (internal citation omitted). *See also Daniels v. Williams*, 474 U.S. 327, 335–36 (1986) (holding that the constitution does not duplicate duties of care in the common law of torts); *Baker v. McCollan,* 443 U.S. 137 (1979) (same); *Paul v. Davis,* 424 U.S. 693 (1976) (same).

Earlier in *Walker*, the Court wrote:

11

> "Due process" does not mean "due care." We concluded in *Bowers v. DeVito,* 686 F.2d 616 (7th Cir. 1982), that because the bill of rights is a charter of negative liberties, the state need not protect people from danger. *Bowers* held that the state has no constitutional obligation to keep aggressive people out of free society. Subsequent cases have held, among other things, that the police have no constitutional duty to save people in danger. The bill of rights is designed to protect people from the state, not to ensure that the state supplies minimum levels of safety or comfort. Governments regularly sacrifice safety for other things.

*Walker*, 791 F.2d at 509–10 (internal citations omitted) (collecting cases).

Regarding the third element—that the Sheriff's Office's conduct in question "shocks the conscience"—we do not find the alleged failures on the part of the Sheriff's Office as set forth in the Complaint to be of the sort or degree to shock the conscience. Staffing shortages, prison uniform policies, electronic surveillance inadequacies within the jail premises, a lack of access to defibrillators, deficient, risky transportation procedures for moving inmates by deputies, inconsistent compliance with other existing regulations—none of these derelictions is so severe or inexcusable or beyond the pale as could be fairly described as capable of shocking the conscience.

Thus, because the Estate's claims do not reveal any basis on which to show that they would fall within either of the exceptions to the holding in *DeShaney*, and because *DeShaney* clearly holds that the due process clause imposes no general affirmative duty to protect a public employee of the state, nor does it guarantee a public employee a workplace free of unreasonable risks of harm, Defendants' Motion for Judgment on the Pleadings must be granted as to the Estate's substantive due process claim.

## II.    Failure to Train

The Complaint does not explicitly allege a constitutional violation based on a failure to train. However, because we have found, for the reasons set forth above, that the Estate has not sufficiently alleged a violation of Deputy Durm, Sr.'s substantive due process rights, Defendants cannot be held liable for a failure to train because "there can be no liability under *Monell* for failure to train when there has been no violation of the plaintiff's constitutional rights." *Hart v. Mannina*, 992 F. Supp. 2d 896, 912 (S.D. Ind. 2014) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007)). Accordingly, Defendants' Motion for Judgment on the Pleadings must be granted as to any claim based on the Estate's failure to train.

## III.    Official Capacity Claim Against Sheriff Forestal

Having determined that the Estate's *Monell* claim against the Sheriff's Department fails, the claim against Sheriff Forestal in his official capacity must also be dismissed. Suing an individual defendant in his official capacity in a § 1983 lawsuit is simply an alternative way of pleading a *Monell* claim against a governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). Accordingly, the Estate's claims against Sheriff Forestal in his official capacity are duplicative of those brought against the Sheriff's Department, and therefore must be dismissed as well.

## Conclusion

For the reasons detailed above, Defendants' Motion for Judgment on the Pleadings, dkt. 9, is <u>GRANTED</u> as to the claims against the Marion County Sheriff's Office and Sheriff Forestall. The case shall proceed as to the remaining parties.

IT IS SO ORDERED.

Date: 3/31/2025

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

Rosemary L. Borek
Clark Johnson & Knight, Ltd.
rborek@cjklaw.com

Anthony W. Overholt
Frost Brown Todd LLP
aoverholt@fbtlaw.com

Michael W. Phelps
Hankey Marks & Crider
mphelps@hankeylaw.com

Pamela G. Schneeman
Clark Johnson & Knight, Ltd.
pschneeman@cjklaw.com